UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> SERVICES FOR THE UNDERSERVED, INC., SUS FOUNDATION, INC., SUS - AIDS SERVICES, INC., SUS – DEVELOPMENTAL DISABILITIES SERVICES, INC., SUS - HOME ATTENDANT SERVICES, INC., , SUS - HOME CARE SERVICES INC., , SUS - MENTAL HEALTH PROGRAMS INC. and JEMMA SAVARY, as Administratrix of the Estate of Glendon Young. <br><br> Defendants. | CIVIL ACTION NO. _____ <br><br> **COMPLAINT FOR DECLARATORY RELIEF** <br><br> Plaintiff demands Trial by Jury <br><br> ECF CASE <br><br> FEB 1 9 2008 <br> U.S.D.C. S.D. N.Y. <br> CASHIERS |

Plaintiff, Philadelphia Indemnity Insurance Company ("Philadelphia"), by and through its

attorneys, Marshall, Conway, Wright & Bradley, P.C., as and for its complaint alleges, upon

knowledge with respect to itself and its own acts and upon information and belief as to all other

matters, as follows:

## NATURE OF THE CASE

1.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201

concerning the rights and obligations under an insurance policy in relation to a personal injury

claim.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) because this action arises between citizens of different states and meets the jurisdictional requirement for the amount in controversy.

3       The amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      Venue in this District is proper under 28 U.S.C. § 1391(a)(1) because the corporate defendants maintain their principal place of business in this District.

## PARTIES

5.      Plaintiff, Philadelphia Indemnity Insurance Company ("Philadelphia"), is a corporation authorized and existing under the laws of the State of Pennsylvania with its principal place of business located at One Bala Plaza, Bala Cynwyd, Pennsylvania.

6.      Defendant, Services for the Underserved, Inc., is a corporation authorized and existing under the laws of the State of New York with its principal place of business located at 305 Seventh Avenue, New York, New York.

7.      Defendant, SUS Foundation, Inc., is a corporation authorized and existing under the laws of the State of New York with its principal place of business located at 305 Seventh Avenue, New York, New York.

8.      Defendant, SUS - AIDS Services, Inc., is a corporation authorized and existing under the laws of the State of New York with its principal place of business located at 305 Seventh Avenue, New York, New York.

9.      Defendant, SUS – Developmental Disabilities Services, Inc., is a corporation

2

authorized and existing under the laws of the State of New York with its principal place of business located at 305 Seventh Avenue, New York, New York.

10.    Defendant, SUS - Home Attendant Services, Inc., is a corporation authorized and existing under the laws of the State of New York with its principal place of business located at 305 Seventh Avenue, New York, New York.

11.    Defendant, SUS - Home Care Services Inc., is a corporation authorized and existing under the laws of the State of New York with its principal place of business located at 305 Seventh Avenue, New York, New York.

12.    Defendant, SUS - Mental Health Programs Inc., is a corporation authorized and existing under the laws of the State of New York with its principal place of business located at 305 Seventh Avenue, New York, New York.

13.    Defendant Jemma Savary, sued solely in her capacity as the Administratrix of the Estate of Glendon Young, is an individual who resides in the State of New York, and also resides in New York for the purposes of this suit as Mr. Young at all relevant times was a resident of New York.

## GENERAL ALLEGATIONS

14.    On or about May 31, 2006, Philadelphia issued Policy No. PHPK170984 (the "Policy") to Services for the Underserved, Inc. for a policy period from May 31, 2006 to May 31, 2007.

15.    In relevant part, the Policy provides Commercial General Liability Coverage ("CGL") in the amount of $1,000,000 per "occurrence" and Human Services Organization

3

Professional Liability Coverage ("PL") in the amount of $1,000,000 per "professional incident."

16.    The Policy does not name SUS Foundation, Inc. as an insured.

17.    The named insured schedule to the Policy identifies the following corporate

entities: (1) "Services for the Underserved AIDS Services, Inc."; (2) "Services for the

Underserved Mental Retardation Programs Inc."; (3) "Services for the Underserved Home

Attendant Program Inc."; (4) "Services for the Underserved Home Care Services Inc."; and

(5) "Services for the Underserved Mental Health Programs Inc."

18.    In relevant part, the CGL insuring agreement in the Policy reads as follows in

Section I, Coverage A, 1.a. – b.:

> We will pay those sums that the insured becomes legally obligated
> to pay as damages because of "bodily injury" or "property damage"
> to which this insurance applies.  We will have the right and duty to
> defend the insured against any "suit" seeking those damages even
> if the allegations of the "suit" are groundless, false or fraudulent. . .
> .
>
> This insurance applies to "bodily injury" and "property damage"
> only if: (1) The "bodily injury" or "property damage" is caused by
> an "occurrence" that takes place in the "coverage territory"; (2)
> The "bodily injury" or "property damage" occurs during the policy
> period . . . .

19.    The CGL coverage has an exclusion for "Expected or Intended Injury" in Section

I, Paragraph 2.a. as follows:

> "Bodily injury" or "property damage" expected or intended from the standpoint of
> the insured.  This exclusion does not apply to "bodily injury" or "property
> damage" resulting from the use of reasonable force to protect persons or
> property.

4

20.    The CGL coverage has an exclusion for "Counseling Services" by endorsement:

EXCLUSION – COUNSELING SERVICES

This insurance does not apply to "bodily injury", "property damage" or "personal or advertising injury" arising out of advisory services or counseling with respect to such issues as mental health .
. . .

21.    The CGL coverage has an exclusion for "Professional Liability Coverage" by

endorsement:

EXCLUSION – PROFESSIONAL LIABILITY COVERAGE

In relevant part, this endorsement excludes "bodily injury" "arising out of the rendering or failure to render . . . [a]ny health or therapeutic service, treatment, advice or instruction" or "arising out of any . . . professional incident." "Professional incident" is defined, in relevant part, as "any actual or alleged negligent: a. Act; b. Error; or c. Omission in the actual rendering of professional services to others, including counseling services, in your capacity as a social service organization."

22.    The notice provisions for the CGL coverage are set forth in Section IV –

Commercial General Liability Conditions, as amended by the General Liability Deluxe

Endorsement, as follows:

2. Duties in the Event of Occurrence, Offense, Claim or Suit

a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, which may result in a claim.    To the extent possible notice should include:

(1)    How, when and where the "occurrence" or offense took place;
(2)    The names and addresses of any injured persons and witnesses; and

(3)     The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1)     Immediately record the specifics of the claim or "suit" and the date received; and

(2)     Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1)     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)     Authorize us to obtain records and other information;

(3)     Cooperate with us in the investigation or settlement of the claim or defense against the "suit" and

(4)     Assist us, upon our request, in the enforcement of any right against any person or organization, which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur and expense, other than for first aid, without our consent.

## GENERAL LIABILITY DELUXE ENDORSEMENT

E. Duties in The Event of Occurrence, Claim or Suit

1. The requirement in condition 2.a. (Conditions, Section IV) that you must see to it that we are notified as soon as

6

practicable of an "occurrence" or an offense, applies only when the "occurrence" or offense is known to:

    (a) You, if you are an individual;
    (b) A partner, if you are a partnership; or
    (c) An executive officer or insurance manager, if you are a corporation.

2. The requirement in condition 2.b. that you must see to it that we receive notice of a claim or "suit" as soon as practicable will not be considered breached unless the breach occurs after such claim or "suit" is known to:

    (a) You, if you are an individual;
    (b) A partner, if you are a partnership; or
    (c) An executive officer or insurance manager, if you are a corporation

23.    The General Liability part also contains the following definitions in SECTION V – DEFINITIONS, as amended by the General Liability Deluxe Endorsement:

3. "Bodily injury": a. Means bodily injury, sickness, or disease sustained by a person, and includes mental anguish resulting from any of these; and b. Except for mental anguish, includes death resulting from the foregoing (item a. above) at any time.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

24.    In relevant part, the PL insuring agreement, in its Preface and Section I.A.1-2. reads as follows:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under the policy. . . .

We will pay those sums that the insured becomes legally obligated to pay as "damages" arising out of a "professional incident" in the course of performing services for, or on behalf of, your human services organization to which this insurance applies. We have the right and duty to defend any "suit" seeking those "damages." . . .

This insurance applies to "damages" only if: (1) The "damages" result from a "professional incident" that takes place in the "coverage territory"; and (2) The "professional incident" occurs during the policy period.

25.    In relevant part in Section II, B.2., the PL coverage is extended to Named Insureds under the policy, to their directors and executive officers (but only with respect to their duties as directors and officers) and their employees (but only for acts within the scope of their employment by a Named Insured or while performing duties related to the conduct of the Named Insured).

26.    The PL coverage is also limited by the following exclusions:

B.    Exclusions

This insurance does not apply to "damages":

1.    Expected or intended from the standpoint of the insured.

2.    For any actual or alleged breach of contract or agreement. This exclusion does not apply to liability for "damages" that the insured would have in the absence of the contract or agreement.

3.    Arising out of the operation of any hospital, sanatorium, medical clinic, or any other medical facility or laboratory. . . .

5.    Arising out of the prescription, utilization, furnishing, or dispensing of drugs or medical, dental or nursing supplies or appliances, except as directed by a physician and in the normal practice as a social service organization provider. . . .

8

20.  Arising out of any criminal, dishonest, fraudulent or malicious act or omission. This exclusion does not apply to any insured who did not:
a. Personally participate in committing any such act; or
b. Remain passive after having personal knowledge of any such act or omission. . . .

22.  Arising out of acts, errors or omissions of a managerial or administrative nature.

27.  The PL coverage also contains SECTION IV – CONDITIONS and SECTION V - DEFINITIONS, which state in part as follows:

SECTION IV - CONDITIONS

C. Duties in the Event of Professional Incident, Claim or Suit.

1.  You must see to it that we are notified as soon as practicable of a "professional incident" which may result in a claim. To the extent possible, notice should include:

a.  All available information about the circumstances concerning the "professional incident" including:
(1) How, when and where it took place; and
(2) The names and addresses of any witnesses and persons asking "damages"; and

b.  What claim you think may result.

SECTION V – DEFINITIONS

14. "Professional Incident" means any actual or alleged negligent:
a.  Act;
b.  Error;
c.  Omission

9

in the actual rendering of professional services to others, including counseling services, in your capacity as a social service organization.  Professional services includes the furnishing of food, beverages, medications or appliances in connection therewith

Any or all "professional incidents" arising from interrelated or series of acts, errors or omissions shall be deemed to be one "professional incident" taking place at the time of the earliest "professional incident".

15.    "Suit" means a civil proceeding in which "damages" are sought and to which this insurance applies.

28.    A Verified Complaint has been filed captioned *Jemma Savary, as Administratrix of the Estate of Glendon Young v. SUS Foundation, Inc.; SUS – AIDS Services, Inc.; SUS – Developmental Disabilities Services, Inc.; SUS – Home Attendant Services, Inc.; SUS – Home Care Services, Inc.; SUS – Mental Health Programs, Inc.; "John Doe"; and "Jane Doe,"* Index No. 37809/07 (N.Y. Sup. Ct., Kings Co. 2007). A copy of the *Savary* Verified Complaint ("Underlying Complaint") is annexed as Exhibit A.

29.    The Underlying Complaint alleges that the defendants in the *Savary* action are engaged in the business of providing residential and support services to individuals with special needs." Underlying Complaint, ¶5.

30.    The Underlying Complaint alleges that the defendants in the *Savary* action are the owners and in possession of 457 St. Marks Avenue, Brooklyn, New York (the "premises") and used or rented the premises as supportive residential housing for individuals with disability and special needs, including Mr. Young. *Id.*, ¶¶6-7.

31.    The Underlying Complaint alleges that the defendants in the *Savary* action were

10

required to provide specialized support services and attention to the residents of the premises including maintaining the premises, which were under their control, supervision and possession, in a safe condition. *Id.*, ¶¶7-8.

32.    The Underlying Complaint alleges that the defendants in the *Savary* action "operated, owned, controlled, monitored and maintained" the common areas for the premises and knew that the common areas were used by the residents for entering and exiting the building. *Id.*, ¶9.

33.    The Underlying Complaint alleges that the defendants in the *Savary* action were obligated both to maintain the common areas in a reasonably safe condition as well as to "supervise and monitor the disabled residents using the common areas." *Id.*, ¶10.

34.    The Underlying Complaint alleges that the defendants in the *Savary* action failed to fulfill their duty as to Mr. Young as the common areas were "caused and permitted to be wet and slippery, to have depressions, ruts, cracks and holes" such that they constituted a menace to Mr. Young. *Id.*, ¶10.

35.    The Underlying Complaint alleges that "[o]n or about September 20, 2006, the decedent Glendon Young was walking on the third floor passage/veranda [of the premises] close to the stairways when he stepped on a slippery, wet and uneven surface, slipped, then fell and stumbled down the stairs to the second floor, where he was found with fatal and permanent injuries which resulted in his death." *Id.*, ¶11.

36.    The Underlying Complaint alleges that the damages that resulted were caused by the defendants' negligence as to the condition of the common areas as well as inadequate

11

supervision of Mr. Young, who was under "the care and protection of the defendants." *Id.*, ¶12.

37.    The Underlying Complaint alleges that Mr. Young died on April 13, 2007, and that the foregoing events resulting in damages to Mr. Young's two children and to his estate (through expenses incurred) in the amount of $1 million dollars and damages of $2 million for pain and suffering endured by Mr. Young after his fall until his death. *Id.*, ¶¶14-20.

38.    Services for the Underserved, Inc. first provided notice to Philadelphia concerning Mr. Young's fall on or about April 12, 2007.

39.    None of the defendants in the *Savary* suit provided notice to Philadelphia concerning Mr. Young's fall until after the filing of the *Savary* complaint in New York Supreme Court, Kings County.

40.    As a condition precedent, the Policy requires that any notice of an "occurrence" and any notice of a "professional incident" be provided to Philadelphia "as soon as practicable," which defendants failed to do.

41.    The failures to give notice as required by the Policy are particularly egregious given the allegations in the Underlying Complaint that Mr. Young's fall resulted in his death.

42.    By reason of the foregoing, Philadelphia is not obligated to defend or indemnify any of the defendants in the *Savary* suit.

43.    An actual controversy exists between the parties as to their rights and obligations under the Policy.

44.    Circumstances exist that justify a determination by this Court, pursuant to 28 U.S.C. 2201, of the rights and obligations of the parties under the Policy and that determination

12

will be beneficial to both plaintiff and defendants.

45.    Philadelphia has no adequate remedy at law.

## FIRST CAUSE OF ACTION

46.    Philadelphia repeats, reiterates and realleges Paragraphs 1 through 48 as though set forth in full herein.

47.    On the basis of the foregoing, Philadelphia is entitled to a declaratory judgment that none of the defendants in the *Savary* action is an insured under the Policy, such that Philadelphia does not have a duty to defend or indemnify any defendant with respect to the *Savary* action.

## SECOND CAUSE OF ACTION

48.    Philadelphia repeats, reiterates and realleges Paragraphs 1 through 50 as though set forth in full herein.

49.    In the alternative, on the basis of the foregoing, Philadelphia is entitled to a declaratory judgment that each and every defendant that is an insured under the Policy breached its obligation to provide timely notice to Philadelphia of Mr. Young's fall and any related "occurrence" or "professional incident," such that Philadelphia does not have a duty to defend or indemnify any defendant with respect to the *Savary* action.

## THIRD CAUSE OF ACTION

50.    Philadelphia repeats, reiterates and realleges Paragraphs 1 through 34 as though set forth in full herein.

51.    In the alternative, on the basis of the foregoing, Philadelphia is entitled to a

declaratory judgment that any of Philadelphia's duties that may have otherwise arisen with respect to the *Savary* action are precluded by the by other terms, conditions, and/or exclusions in the Policy, such that Philadelphia does not have a duty to defend or indemnify any defendant with respect to the *Savary* action.

**WHEREFORE**, Philadelphia respectfully requests that this Court issue a declaratory judgment that:

(a)    None of the defendants in the *Savary* action is an insured under the Policy, such that Philadelphia does not have a duty to defend or indemnify any defendant with respect to the *Savary* action; and

(b)    In the alternative, each and every defendant that is an insured under the Policy breached its obligation to provide timely notice to Philadelphia of Mr. Young's fall and any related "occurrence" or "professional incident," such that Philadelphia does not have a duty to defend or indemnify any defendant with respect to the *Savary* action; and

(c)    In the alternative, any of Philadelphia's duties that may have otherwise arisen with respect to the *Savary* action are precluded by other terms, conditions, and/or exclusions in the Policy, such that Philadelphia does not have a duty to defend or indemnify any defendant with respect to the *Savary* action; and

(d)    Grants Philadelphia such other and further relief as this Court may deem just, proper, and equitable under the circumstances together with the costs and disbursements of this action.

14

## JURY DEMAND

Philadelphia demands trial by jury of all issues so triable in this cause.

Dated: February 21, 2008
      New York, New York

                                   MARSHALL, CONWAY,
                                   WRIGHT & BRADLEY, P.C.

                                   By: Christopher T. Bradley (CTB 4725)
                                   116 John Street
                                   New York, New York 10038
                                   (212) 619-4444

                                   Attorneys for Plaintiff
                                   Philadelphia Indemnity
                                   Insurance Company

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS - .
-----------------------------------------X
JEMMA SAVARY as Administratrix of the Estates of          Index No.: 37867/07
GLENDON YOUNG, deceased

                                    Plaintiff

                                                          SUMMONS

          ·against·
                                                          PLAINTIFF'S RESIDENCE
                                                          2260 STRAUSS STREET
SUS FOUNDATION, INC; SUS – AIDS SERVICES,                 BROOKLYN, NY 11212
INC; SUS - DEVELOPMENTAL DISABILITIES
SERVICES, INC; SUS - HOME ATTENDANT
SERVICES, INC; SUS - HOME CARE SERVICES,
INC, SUS – MENTAL HEALTH PROGRAMS, INC;
"JOHN DOE" AND "JANE DOE"

                                    Defendants.
-----------------------------------------X

TO THE ABOVE NAMED DEFENDANT(S)

          You are hereby summoned to appear in the Supreme Court of the City of New York,
County of Kings at the office of the clerk of the said court at 360 Adams Street Brooklyn, New
York in the County of Kings, City and State of New York, within the time provided by law as
noted below and to file your answer to the annexed complaint with the clerk; upon your failure
to answer, judgment will be taken against you for the relief demanded in the complaint.

NOTE: THE LAW PROVIDES THAT:
          (a) if this summons is served by its delivery to you personally within the City of New
York, you must appear and answer within twenty (20) days after such service; or
          (b) if this summons is served by delivery to any person other than you personally, or is
served outside the City of New York, or by publication, or by any means other than personal
delivery to you within the City of New York, you are allowed thirty (30) days after proof of
service thereof is filed with the clerk of this court within which to appear and answer.

DEFENDANTS' ADDRESS:
305 SEVENTH AVENUE, 10TH FLOOR NEW YORK, NY 10001

Dated: October 2, 2007

Serve On:
SUS - MENTAL HEALTH
PROGRAMS, INC.

                                         Valentine O. Nnebe, Esq.
                                         Nnebe & Nnebe
                                         Attorneys for Plaintiff
                                         255 Livingston Street, 4th Floor
                                         Brooklyn, NY 11217
                                         (718) 797-1384

                                                                                    1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
JEMMA SAVARY as Administratrix of the Estates of        Index No.: 37809/t.7
GLENDON YOUNG, deceased

                        Plaintiff,                        VERIFIED COMPLAINT

        -against-

SUS FOUNDATION, INC; SUS – AIDS SERVICES,
INC; SUS - DEVELOPMENTAL DISABILITIES
SERVICES, INC; SUS - HOME ATTENDANT
SERVICES, INC; SUS - HOME CARE SERVICES,
INC; SUS – MENTAL HEALTH PROGRAMS, INC;
"JOHN DOE" AND "JANE DOE"

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        The Plaintiff, JEMMA SAVARY, complaining of the defendants, through her attorneys,
NNEBE & NNEBE., alleges as follows:

## AS AND FOR A FIRST CAUSE OF ACTION

        1.      That at the time of commencement of this action the plaintiff was and is a resident of the
County of Kings, State of New York.

        2.      That on or about the 13th day of April 2007, Glendon Young, the decedent above named,
died a resident of Kings County, New York, intestate, and thereafter and on the 21st day of August
2007, limited letters of administration for the purpose of prosecuting this claim was duly issued and
granted by the Surrogate's Court of the County of Kings to Jemma Savary, plaintiff; and the plaintiff
duly qualified and thereafter acted and is still acting as administratrix thereon.

        3.      Upon information and belief, at all times hereinafter mentioned, the defendants SUS
Foundation, Inc; SUS – Aids Services, Inc; SUS - Developmental Disabilities Services, Inc; SUS -
Home Attendant Services, Inc; SUS - Home Care Services, Inc; and SUS – Mental Health Programs.

                                    1

Inc (hereinafter. collectively "SUS") were related domestic not-for-profit corporation having a place of business in the City and State of New York.

4.     Defendants, "John Doe" and "Jane Doe" are fictitious names representing other persons and corporations, including SUS' employees, whose names are unknown to plaintiff and who participated or are responsible for the allegations contained herein.

5.     That at all times hereinafter mentioned, SUS was and still is engaged in the business of providing residential and support service to individual with special needs, including individuals with developmental disability, individuals with mental illness, elderly persons, individuals with HIV/AIDS, and homeless and marginalized individuals, in various places in New York City and in particular at the facility located at 457 St. Marks Avenue, Brooklyn, NY 11238, County of Kings.

6.     At all times hereinafter mentioned, SUS was, and still is the owner and in possession of certain premises known as 457 St. Marks Avenue, in Brooklyn, State of New York, and used or rented the premises as supportive residential housing for individuals with disability and special needs.

7.     At all times herein mentioned, and for some time prior thereto. the decedent and other persons were supportive housing residents at SUS premises located at 457 St. Marks Avenue. Brooklyn New York. Decedent was residing on the third floor of the supportive housing facility. As a result of the disability and special needs of the residents, including the decedent, SUS is required to provides specialized supportive services and attention to the residents including maintaining the premises in safe and conducive condition.

8.     At all times herein mentioned there was upon the premises, for the purpose of permitting access and egress to the apartments/rooms, such common areas as stairways, corridors, passages, and verandas which was and still is under the control, supervision, and possession of the SUS.

2

9.  At all times herein mentioned, SUS operated, owned, controlled, monitored and maintained the said common areas of the supportive residential facility located at 457 St. Marks Avenue, Brooklyn, which common areas were monitored 24-hours close-circuit televisions, employees and superintendents. Upon information and belief, to the knowledge of SUS, the said common areas, and in particular the verandas, corridors, passages, and stairways were used by the residents of the supportive housing for purposes of ingress and egress.

10.  SUS had a duty to maintain the said common areas in a reasonably safe condition making it safe for the supportive housing residents to use and to adequately supervise and monitor the disabled residents using the common areas; SUS negligently and carelessly disregarded that duty to maintain the common areas in a reasonable safe condition and to monitor and supervise the residents using them so that it was in a dangerous and defective condition, in that it was caused and permitted to be wet and slippery, to have depressions, ruts, cracks and holes, and it constituted a menace to the safety of the decedent Glendon Young lawfully resident therein.

11.  That on or about September 20, 2006, the decedent Glendon Young was walking on the third floor passage/veranda close to the stairways when he stepped on a slippery, wet and uneven surface, slipped, then fell and stumbled down the stairs to the second floor, where he was found with fatal and permanent injuries which resulted in his death. Upon information and belief, the decedent's fall was due to the wet, slippery, uneven and other hazardous conditions of the passages, corridors and stairways of the supportive housing. The reason and occurrence of the injuries which the decedent sustained thereby, were caused by the joint, several, and collective carelessness and negligence of the defendants. Plaintiff alleges that the incident resulting from plaintiffs fall does not occur without negligence.

3

12. That the decedents fall and resulting damages were caused by the negligence of the defendants in that the condition of the common areas were dangerous to the decedent and other residents, and were negligently, recklessly, and carelessly maintained by the defendants in that they caused that condition to be created and maintained and in that they failed to exercise adequate supervision over the activities of the residents of the premises, including the decedent and failed to take every or in fact any precaution to insure the safety of the life and limbs of the decedent, who was on the premises as supervised housing resident under the care and protection of defendants .

13. The facts of the dangerous condition of the common areas were known by the defendants, their agents, servants, and employees to have existed for a long period of time prior to the occurrence, or in the exercise of due care should have been known to the defendants.

14. By reason of the defendants' negligence and misconducts, Glendon Young died and left surviving as his distributees and next of kin, his children, Michelle Bell and D'Andra Frierson.

15. That by virtue of the wrongful death of the decedent the children have been deprived of the loss of services and comfort and society of his presence.

16. That because of the injuries sustained by the decedent which resulted in his death, all occasioned by the gross negligence and wanton carelessness of the defendants, the plaintiff necessarily incurred funeral expenses and other expenses in connection of the burial of the decedent and will necessarily incur expenses in the settlement of the estate of the decedent in various and diverse amounts.

17. That by reason of the foregoing, the next of kin of Glendon Young, deceased, has sustained damages in the sum of One Million ($1,000,000.00) Dollars.

## AS AND FOR A FIRST CAUSE OF ACTION

18. The plaintiff repeats, reiterates and realleges all of the allegations contained in paragraphs 1-17 herein with the same force and effect as if fully set forth herein.

4

19.    By reason of the negligence and misconducts of the defendants hereinbefore mentioned, decedent was caused and continues before his death to be sick, sore, lame, and disabled and suffered injuries in and about his head, body, limbs, and was caused severe conscious pain, agony, anguish and suffering from the time of the occurrence until the time of his death, which resulted from the injuries sustained, all to his damage in the sum of Two Million $2,000,000.00 Dollars.

20.    That the decedent Glendon Young died on April 13, 2007, leaving that cause of action surviving.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, in the sum of $1,000,000.00 for her first cause of action, and in the sum of $2,000,000.00 for her second cause of action, together with costs, attorneys' fees and disbursements of this action.

Dated: Brooklyn, New York
       October 2, 2007

                                        NNEBE & NNEBE

                          By:           _____
                                        Valentine O. Nnebe, Esq.
                                        255 Livingston Street, 4th Floor
                                        Brooklyn, New York 11217
                                        Tel. No.: (718) 874-6421
                                        Fax No.: (718) 502-9953

5

## VERIFICATION

STATE OF NEW YORK )
COUNTY OF KINGS ) SS.:

Jemma Savary, being duly sworn, deposes and says:

I am the Plaintiff in the within action; I have read the foregoing verified complaint and know the contents thereof and the same is true to my own knowledge except as those matters alleged to be upon information and belief, and that as to those matters, I believe them to be true.

Sworn to before me this
16th day of Octobre, 2007.

_____
Notary Public

_____
Jemma Savary

VALENTINE O. NNEBE
Notary Public, State of New York
No. 02NN6131702
Qualified In Kings County
Commission Expires August 15, 2009

6